The first case today is 13-2527, Jonathan Foley v. Wells Fargo Bank, N.A. DiViacchi, good morning. Good morning, judges. May it please the court, I'll deviacchi for the appellant. May I reserve one minute for rebuttal? You may. This case is convoluted factually and legally. On the facts, I'd like to emphasize this statement in the judge's decision that plaintiff offered no evidence and indeed made no suggestion that the decision to deny him a modified loan was an erroneous calculation. That statement is completely incorrect. Not only did the pleadings plead that my client would have qualified if he had been given the modification program, but the judge went ahead with a long hearing and treated it as an evidentiary hearing. Evidentiary facts arose during the hearing as to whether that's true. I know this statement is based on this July 30th letter that showed up after my client filed his complaint during the motion to dismiss process. And if the court may remember, what was going on for a year and a half, my client was trying to find out what was going on with the modification program. At the end of July, he was specifically told that he was denied HAMP. On the phone, he was verbally told he was denied HAMP, MP, MD, MPR2 program, that they were the same. He filed a lawsuit. A couple of days later, it gets in the mail, this July 30th letter saying, this is what happened. We've given you, we've run your data through the boat modification programs. You haven't qualified for any of them. And the judge goes, the plaintiff never denied that letter. Well, I mean, legally, you can't deny a letter in the pleadings if the letter doesn't come up until after the pleadings. But more importantly, that's a factual issue. There's factual issues all over the place. That July 30th letter, I mean, isn't even admissible evidence. It's essentially a self-serving statement. It's not part of the factual issue. He was considered for a modification, right? No, that's what they're stating. They're stating in that letter that he was considered. But there's no calculations. I mean, what income did they take into account? He should have been first considered back in February of 2012 when the first foreclosure threat started. Are they considering the income and all that back when they should have considered it a year and a half earlier, or are they considering it in July of 2013? So your position is whether they considered it, period, is a disputed issue of fact. Right. It's completely open. Right. The last evidence in the pleadings, and, again, this is a motion to dismiss based on the pleading inferences, is a couple of days before the file of the complaint, he was on the phone with the modification department, and they told him finally, after a year and a half, they told him, we considered you for HAMP and MPR2. They're the same. You're denied. And that's where it should have stopped. The judge had this law, and it was essentially an evidentiary summary judgment hearing where the bank brings in this evidence and brings in an affidavit and gives their version of the events, and the judge treated it as if that was the end of the story. That's simply legally factually not accurate. In terms of the law, what would have been involved in consideration that wasn't done? Well, at a minimum, because in the district court now they can do these modified discovery scheduling, the bank should have produced what numbers they were using. How did they come up with their denial of not only the MPR2, but the waterfall provisions in the settlement agreement? What income did they use? What total interest calculation did they use? What penalty did they include? How did they cut it back? I mean, it's a complicated format there that goes on two pages. I don't even have it memorized, but if you look at those pages in the agreement, it's like two pages of what they were supposed to do in increments to finally reach a result. At a minimum, the judge should at least have limited discovery, have them produce that, and look at the figures and see if they, in fact, did do that, and when they did it. Did they use the February 2012 figures when they first should have done it, or did they use the figures from a year and a half later? So at a minimum, that should have occurred. And if that went through and it turns out they filed a settlement agreement and my client still didn't qualify, that would have been the end of the story. But you can't just skip that part of it and assume the defendants, again, was essentially a self-serving statement. That wasn't even a business record. It was a response to his request and his threats of litigation. So I don't even think that would have been admissible at trial. It would have been considered a hearsay. Is there an issue of damages here? There is, Judge Pugliese. It hasn't been foreclosed on, but it's a breach of contract case, and even under California law, a breach of contract occurs upon breach and you're entitled to nominal damages. They haven't raised this issue, and I didn't know if the judges would raise it, but you're correct, there is an issue of damages because the foreclosure hasn't occurred. But you can still go ahead and get nominal damages, and if they do try foreclosure, we can use that judgment to obtain a recovery or to stop the foreclosure. So you're correct. But it hasn't been raised, and it's a very different basis for dismissal than what the district court ruled upon. Under law, really the substance of my argument is whether they waived the settlement, their preemption arguments, and their arguments on General Law 244, 34A and B. The agreement says applicable state law. If the state law is preempted, how is it applicable state law? Well, because it does apply. I mean, preemption, it's not that the preemption applied. If the law didn't apply, then preemption wouldn't even be an issue. By the wording of the statute, it clearly applies to this situation because they're threatening a foreclosure. So I don't think that's a fair reading of the judge. Words are interpreted in their straightforward manner and in a clear manner. Everyone was represented by counsel. The bank was represented by counsel. So they specifically put in a settlement agreement that they don't want plural evidence to be introduced in terms of interpreting the agreement. They clearly knew what was going on. We have a situation where law does apply, and so the preemption is waived. And that's fairly significant in addition to the NPR 2. I'm sorry, I'm not following your waiver argument. Are you saying it's waived by virtue of the California settlement agreement or waived by virtue of them not raising it at some point? No, waived by contract. The contract specifically states the contract between the settlement agreement, correct. It's a settlement between the parties. It states that the Wells Fargo will agree to comply with any applicable state law. They even waived interpretation of the terms of the contract by plural evidence or any exterior evidence. It's simple, straightforward language. The general law does apply to this situation, or is intended to apply to this situation. It creates provisions that apply to this situation, so it's applicable. If it weren't applicable, as I stated, the preemption issue would be meaningless because the law doesn't apply. There's no need to argue preemption. And the general law, in addition to the requirements in the settlement agreement, provides additional requirements for modification. You not only have to go through the various two pages of modification provisions in the agreement, but the general law states that they have to make an attempt to do a commercially viable modification. So that opens up, essentially, a third option. There's other commercially viable modifications than what's stated in the settlement agreement. This is a case where this condo was part of it. Are you referring to 33B? For some reason, I forgot. I'm having a blank here. I don't remember if it was B. I don't remember if it was 30. Is it Chapter 34B? Whatever it is, you're right. It's B. A is the notice requirement. 35B. Yeah, right. 35A is the notice requirement, and 35B is the requirement that requires commercially viable modification. In this case, that provides another provision because this condo was essentially underwater back in 2008 when the crash occurred. It's very different now. I mean, it's probably why Wells Fargo doesn't want to do a modification. They have a valuable asset here, and they don't want to mess around with what was clearly a loan that these Option 1 loans were horrible loans. So they want to just clean it up, get this valuable condo and foreclose. But in this situation now, there's a lot of ways to modify it that aren't just listed in the settlement agreement, and they're refusing to even talk about that. There's really the substance of my argument in terms of the facts. I'll go back and emphasize that all this started back, the first foreclosure attempt was in February of 2012, a couple of months after the settlement agreement. That's when the first attempt for modification was made, and that's when the first modification was lost. For the next year and a half, my client was trying to get modification applications in, trying to get answers, trying to get responses as to why he was denied. He never got anything. He went to the AG's office. They got Wells Fargo to accept another modification. Again, the same problem. The paperwork goes in. He hears nothing specifically as to whether he was denied, as to why he was denied. He finally, a year and a half later, on the eve of filing suit, on the eve of what at that point was the third foreclosure attempt, he finally has this phone call with their modification department where he specifically stated, HAMP and MAPR2 are the same. You were denied for both. That's false. HAMP and MAPR2 are not the same, even if you don't consider the waterfall provision that's in the settlement agreement. If you do consider the waterfall provision, you have essentially three different modification programs, which according to the statement over the phone, all of them were denied, without any explanation, without any reason. He files a lawsuit. He tries to get everything stayed. The first judge actually did it. That gets transferred over to the new district court judge. Then that's where this July 30th letter appears from the legal counsel's office, just making the general statement that you were denied. You were considered for everything. You were denied. Everything else is the same as it was for the previous year and a half. No explanation as to why he was denied. No income statements. No interest statements. Nothing as to what the fees were. Nothing as to how the calculations were. Absolutely nothing in detail as to why the denial occurred. It goes to a motion to dismiss. And as I pointed out, Judge Saylor's entire decision essentially rests on this conclusion that my client never pled, never disputed that they did properly apply the modification program. And that's just, in terms of pleadings, is false. I mean, he pled that. He pled specifically that in the complaint in count one. And if you, the bank submitted the hearing transcript as a supplemental appendix. If you look at that hearing transcript, the judge was actually having essentially an evidentiary hearing. He was asking my client of various facts, such as why does he think he needs mortgage insurance. And the banks were making various states in the record. And that's simply not how a motion to dismiss should occur. Finally, on the settlement agreement. Did you put anything in the record about the banks making an erroneous calculation under the HAMP program of income or whatever? No, my client couldn't. He didn't get any information from that. When the motion to dismiss was filed, they filed this during the July 30th letter, which was the first time ever they gave him any explanation. Not an explanation. They said that he was denied for all the programs. But there was no calculation in there. My client never got discovery. He was pro se at the time. He never had access to the actual loan file in the actual modification. Was there a request to get discovery on the calculation? Well, he did it if you read the transcript of the argument. Yeah, he kept arguing that. The judge stated that I just got this letter after filing it. I don't know what they based it on. I don't have any of their records. I don't have anything. Yes, orally at the hearing, but you shouldn't even have to do that. It's a motion to dismiss. It's supposed to be based on the pleadings. It's supposed to be based on inferences from the pleading. I know the judge says the July 30th letter is undisputed, but it was disputed in terms of what it said, that they did all their job. And, again, it's supposed to be admissible evidence. Even if it's undisputed in terms of being a document or in terms of being above the public record for motion to dismiss purposes, it's still supposed to be admissible evidence. But there's nothing in the complaint that alleges an erroneous calculation, is there? Yes, Judge. He puts it at paragraph five of his count three. Plaintiff believes his income is commercially reasonable for defendant to make a reasonable offer of settlement if defendant would act in good faith and afford plaintiff a fair review. I ran out of time here, Judge. But he had no way of doing it, Judge, because he didn't have any of their figures. Thank you, Judge. There's no – sorry. Is there any direct allegation that these letters were a lie? The July 30th letter? Yeah. Well, he couldn't – not in the pleadings, because the July 30th letter didn't show up until after he filed the complaint. So, no, the pleadings goes through the prior year and a half of ignoring him, of not giving him any answers. The July 30th letter came up after the complaint, so there was nothing in the pleadings. I mean, he was pro se. If he knew what he was doing, he would have amended the complaint as a matter of right and done stuff like that. But he was pro se, Judge, so he doesn't know the rules. Thank you, Judge. Thank you. May it please the Court. My name is David Bizarro, and I represent the Appley Wells Fargo Bank. Before I attend to my own side of the case, of which I'll brief the Court, that there are three reasons that this panel ought to sustain the – affirm the holding of the district court dismissal. Let me just briefly address some of the comments of my brother. First of all, the reason that the Court was having this evidentiary hearing was because it was having an evidentiary hearing on the plaintiff's motion for preliminary injunction. So this was not an evidentiary hearing on a motion to dismiss, which would be odd. It was an evidentiary hearing on a motion for preliminary injunction, which was completely proper. Without regard to that evidentiary hearing, one need look no further than the allegations of the complaint itself to see that the case that is here on appeal is a different case that was presented to the trial court. The Attorney Diviaki did not represent the borrower in the trial court. The borrower was pro se in the trial court, and Attorney Diviaki is attempting to reinvent this case here on appeal as appellate counsel, and that is simply not allowed. There are no allegations in the complaint, none, that claim that Wells Fargo impermissibly calculated the HAMP or the MAP II-R calculations. There are no facts put in the complaint. There are no such allegations made in the complaint. The complaint was about whether or not Wells Fargo made the – available to Mr. Foley, and that's it. Counsel, why wouldn't the provision that counsel just quoted from the complaint satisfy the requirement that you're arguing? Because you have to read it in context with the rest of the complaint, Your Honor. That's the only line he can reference at all to anything having to do with fairness of the modification process. Every other line in that complaint talks about fairness in the context of whether he was considered for, and the district court not once but two, two different judges asked him at length, what do you mean by that allegation? What are you trying to explain to me? What does that tell me to do? Both district court judges in two separate proceedings, which we've cited the language of the provisions to this court in our brief, went over it in detail with him where he clarified again and again and again, all I'm talking about is that I don't believe that I was considered for a MAP II-R application. That's the only allegation that I'm raising in my complaint. Well, why isn't whether he was considered a factual assertion? He's asserting that he wasn't considered. You're, in fact, saying that he hasn't. Why isn't that a proof issue also? Well, Your Honor, it's belied by the allegations of the complaint itself. And so if one looks at the factual allegations that are made in the complaint and the letters themselves that are referenced, which are part of the record, specifically the February 19, 2013 letter, the June 29, 2013 letter, the June 27, 2013 letter, and the July 30, 2013 letter, all of those letters explain to Mr. Foley that he was considered for and denied for either or both the HAMP program and the MAP II-R program. So suppose he's alleged in the complaint that he wasn't properly considered because they made erroneous calculations under the HAMP program. Yes, Your Honor. Would that state a violation of the settlement agreement? If he were able to identify facts that showed that they had, in fact, violated some provision of what they were required to do, then he might be able to state a claim for breach of the settlement. Did the settlement agreement require that they make accurate calculations in considering it? No, Your Honor. The settlement, it might be implied, but the settlement agreement states that they're simply to perform the calculations, and that doesn't say you have to do them accurately, but it says that they're required to perform certain calculations. I don't dispute that. How is the plaintiff supposed to know if you did or did not at this stage? I mean, how are we to know that you're just not sending out form letters to everyone saying we considered it, and in your mind you're thinking, okay, that's all we have to do? Whether you, in fact, fairly considered it, or considered it in terms of actually doing the math to see if he qualified. Your Honor, the Supreme Court has set forth in the Iqbal and Tamably cases that the plaintiff is required to plead plausible facts showing a claim. But it's still facts within the plaintiff's knowledge. The plaintiff at this point has no idea what the bank did when it got its application. In other words, it could have just turned around and sent out a form letter if that was the practice of the bank. Your Honor, there are procedural devices available in those circumstances, such as a bill of discovery. No bill of discovery was taken in this case. The Supreme Court has clearly laid down in those two cases that the doors of the courthouse do not open to a complaint until the plaintiff has pled a plausible claim for relief. There are no exceptions that the Supreme Court has ever laid down to that. But we've remanded cases to give a plaintiff in a situation like this some limited discovery to see if there's anything out there. The plaintiff even concedes that if they had been provided, if he had been provided with the calculations, then he wouldn't be here if, in fact, he got the figures and realized that you were right. Your Honor, I believe this Court has done that in instances where the complaint had actually pled a claim, attempted to plead that claim for relief. And the party was up here before in the Court stating, I just didn't have enough facts because I couldn't get the discovery. But here the claim was never actually pled at all. And, in fact, the plaintiff pled himself out of a claim when he repeatedly referenced these letters that the bank had sent to him. Also, the last letter, the July 30th letter, was not sent after the action was filed. The action was filed on August 28, 2013. And the July 30th letter predates August. So I don't believe that's an accurate statement from my brother. So, by the way, our old case law said that we gave some leniency to pro se plaintiffs. Do you think Iqbal has changed that? Your Honor, the case law, that's a complicated question. I think it has a two-part answer. The case law that this Court has laid down, I don't believe, has ever afforded a pro se the ability to make a new case on appeal because they were pro se in the trial court. I don't believe this Court has allowed that. At least I have no recollection of ever reading such a case. With regard to the Supreme Court's rulings in Iqbal and Twombly, the Supreme Court set forth no exception, and I'm not aware of any, for allowing pro ses. The liberal pleading standard that pro ses are afforded still requires them to plead a plausible claim for relief under Iqbal and Twombly. Your Honor, all of the other claims of the complaint are relatively easily dispensed with. They're all preempted by the Homeowners' Loan Act. There's been no waiver of the Homeowners' Loan Act. The reference to state law that exists is simply a reference to state law.  And state law includes federal law, which we've briefed in our papers, showing that no such waiver would occur. Polar preemption cannot be waived as a matter of law by contract. It is not waivable. And the 35A and 35B provisions have nothing to do with the settlement agreement. And so even if it were waived in the settlement agreement, which it was not, the 35A and 35B claims could not be considered waived by that settlement agreement because they have nothing to do with each other. I'm not sure that I understand what you're saying. So, Your Honor, 35A and 35B require things outside of what are the responsibilities of the settlement agreement. The settlement agreement doesn't say you have to comply with 35A and 35B or not. The settlement agreement is about whether the borrower has to be considered for a hamper. This is directed at just the waiver question. Just the waiver question. Right. You say that 35B is clearly inapplicable. I had some difficulty with that because you seem to be reading the word and in the statute to mean or. So the consideration for a hamper modification would satisfy the statute. I'm not sure that's what the statute says. You know, our position is we believe that 35B is satisfied as a matter of law when a hamper review is conducted, and that was the intent of the legislature. Are there cases saying that? I don't recall, Your Honor, off the top of my head. I don't recall if our brief cites any, but that's our reading of the statute. By the way, we believe that the intent of the legislature was to permit financial institutions to comply with 35B by conducting a hamper review, and the reason for that is to avoid things like this litigation over did they or did they not comply with the statute. If you comply with HAMP, which is what the major servicers were already doing, you're good to go, and the legislature wasn't intending to create some additional hurdles beyond that or to have litigation over to create a private right of action effectively over whether they had done that. It doesn't read that way. It says that there's a presumption of good faith if you do the following things, and one of the things would be HAMP, but there seem to be other requirements there also. Thank you, Your Honor. 35A does not actually require a mortgagee to consider offering a modification. It only requires the sending of a notice, and there's no dispute in this case that a notice was sent. The claim in the complaint was that notice was not received, and we did cite case law for that proposition. The failure to receive notice is irrelevant under the statute. It only requires the sending of notice. The covenant of good faith and fair dealing claim would impermissibly expand Wells Fargo's obligations beyond those specified in the settlement agreement. There's no provision in the settlement agreement that has been referenced to show that Wells Fargo committed some breach of the implied covenant of good faith and fair dealing, which is required in California law. With regard to preemption, just to address a few arguments that are in my opponent's brief that he may not have touched on here today. HOLA is field preemption. This court held that in SPGGC v. Ayotte, 458 F3, 525 at page 535. It's a case from this court out of 2007. Additionally, every other circuit court to have addressed the question has held that as well, and I won't read all the sites in the record, but which includes the cases of McCauley from the Fourth Circuit, Milosky from the Sixth Circuit, Casey from the Eighth Circuit, Silvas from the Ninth Circuit, Ockwin from the Seventh Circuit, and Flagg from the Second Circuit. Additionally, every court to have addressed the question has held that Dodd-Frank is not retroactive with respect to contracts which were entered into prior to the date of Dodd-Frank's enactment. And the statute itself, as referenced in our brief, says that explicitly. So there's simply no, there's nothing whatsoever to support that proposition put forth by my brother. Your Honor, the 93A claim was not challenged on appeal, and so as set forth in our papers, the 93A claim has been extinguished. With that, subject to your questions, that concludes my presentation. Thank you. Just quickly, I want to correct the filing issues. The complaint was filed in state court on August 6th. The July 30th letter was received with my client on August 8th, and then they removed it to federal court at the end of the month. So the July 30th letter was received after the initial filing in state court, and I just want to emphasize that the motion in the Smith-Standard is pled facts and reasonable inferences therefrom. If you read the plaintiffs' union entirety, you see a client that for someone who was covered by the settlement agreement for a year and a half, trying to find out why he was denied. He believes that he did qualify. He qualified definitely a year and a half earlier, and he never got an answer to that, even on the July 30th letter. It gives no specific answers to what figures they used to calculate so that my client could see whether they complied with the two pages of criteria in the settlement agreement. Thank you.